(155 App. Div. 554.)

## THOMPSON v. LEVERING & GARRIGUES.

(Supreme Court, Appellate Division, First Department.   March 14, 1913.)

1. MASTER AND SERVANT (§ 116*)—SWINGING SCAFFOLDS—RAILING—LABOR LAW—CUSTOM.

   Labor Law (Consol. Laws 1909, c. 31) § 18, requiring that a scaffold "swung or suspended from an overhead support" shall have a safety railing, it is error, in an action for death of an employé, counting on absence of such a railing, to admit evidence of a local custom in the trade not to use a railing on such scaffolds.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.*]

2. MASTER AND SERVANT (§ 204*)—ASSUMPTION OF RISK—LABOR LAW.

   The defense of assumption of risk, whether "as matter of fact or as matter of law," even as to "open and visible defects," is expressly abolished by Labor Law (Consol. Laws 1909, c. 31) § 202, as amended by Laws 1910, c. 352.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 544–546; Dec. Dig. § 204.*]

3. MASTER AND SERVANT (§ 289*)—CONTRIBUTORY NEGLIGENCE—FORGETTING DANGER.

   Though an employé engaged as a riveter in the construction of a building, who, when passing from one platform to another, fell, his hand slipping on being placed on a freshly painted column, knew of the condition of the paint, and momentarily forgot it, he would not be chargeable with contributory negligence as a matter of law.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089, 1090, 1092–1132; Dec. Dig. § 289.*]

Appeal from Trial Term, New York County.

Action by Agnes Thompson, administratrix of Charles Thompson, against Levering & Garrigues. From a judgment on a verdict for defendant, and from an order denying a motion for a new trial, plaintiff appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

G. Washbourne Smith, of New York City, for appellant.

E. Clyde Sherwood, of New York City, for respondent.

---

SCOTT, J. The action is for damages resulting from the death of plaintiff's intestate. It was brought under the Employer's Liability Law (Consol. Laws 1909, c. 31, §§ 200–204). .

Deceased was an iron worker engaged in riveting on a building in course of construction. He was of a gang of four men working on a scaffold. This scaffold was erected by the men themselves out of materials furnished by defendant. It would be erected at one column, and when the work there was finished would be moved to the next column. The scaffold was made by suspending needle beams, one on each side of the column, to the steel floor beams so that the needle beams extended outside of the building, and were about a foot below the bottom of the floor beams. These needle beams thus ran at right angles to the face of the building. On them planks were laid both outside and inside of the outer or face beam so that there was a platform outside of the face of the building about 4 feet wide and 12 feet long, and a similar one inside the building. Painters worked ahead of this gang, an unusual procedure, so that when the gang set up its platform around a column the paint was still wet. One of the workmen, before the accident, had warned the foreman of the danger of having to work on or around fresh paint.

Immediately before the accident, deceased had been standing on the outside platform holding rivets with a "dolly-bar" while men on the inside platform hammered the rivets. The time came when deceased was called upon to cross over to the inside platform. He stood with one foot on the outside platform, raised his right knee one or two feet to the top of the girder, and took hold of the flange of the column with his right hand to lift himself up. His hand slipped, and he fell to the ground and was killed. The accident happened on October 19, 1911, after the drastic amendments of 1910 to the Labor Law. See Laws 1910, c. 352, amending Labor Law. One Gunnison was acting as foreman and was unquestionably a person exercising superintendence. It was to him that notice had been given respecting the danger of having the columns freshly painted just before the riveters were to work at and around them.

Two imputations of negligence were made against defendants, to wit:

(1) That the scaffold, being a swinging scaffold, was not protected by a railing as required by section 18 of the Labor Law (Laws 1909, c. 36), which provides that:

"Scaffolding or staging swung or suspended from an overhead support, more than twenty feet from the ground or floor, shall have a safety rail of wood * * * extending along the entire length of the outside and ends thereof and properly attached thereto. * * *"

(2) That the defendant was guilty of negligence in ordering the column to be freshly painted immediately before plaintiff was called upon to work at and around it.

[1] The court permitted the defendant to introduce evidence to show that it was not customary to erect railings on a scaffold of the kind used by deceased, and also to attempt to show that it would be impracticable to use such a railing. The evidence on the latter point went no further than to show that it would be inconvenient and use

up time to erect a railing. If the scaffold in question was one "swung or suspended from an overhead support," as we think it clearly was, it was error to admit evidence of a custom not to use railings on such scaffolds. Concerning such a scaffold the law is imperative that there shall be a safety railing, and no evidence of a local custom in the trade is competent to excuse a palpable violation of the law. Whether or not the absence of the railing contributed in any way to the happening of the accident was a fair question; but evidence of a local custom contrary to the express mandate of the statute did not aid in answering that question.

[2] It seems probable that what really did lead to the accident was the adoption by the foreman, after due notice of the danger, of the unusual practice of having the column freshly painted just before the riveters were to work there, and it was a proper question for the jury whether or not this act on the part of the foreman was negligent.

With reference to the imputation of negligence in respect to the painting of the columns, the court fell into serious error in charging certain propositions submitted by the defendant, and refusing to charge other propositions submitted by the plaintiff.

The plaintiff, among other things, requested the court to charge as follows:

"That the deceased by entering upon or continuing in the service of the defendant shall be presumed to have assented to the necessary risks of the occupation or employment, and no others. The necessary risks of the occupation or employment shall be considered as including those risks, and those only inherent in the nature of the business, which remain after the defendant has exercised due care in providing for the safety of plaintiff's intestate, and has complied with the laws affecting or regulating such business or occupation, for the greater safety of such employés."

This request was couched in the language of the statute (Labor Law, § 202, as amended by Laws 1910, c. 352), and the plaintiff, under the circumstances, and particularly in view of the propositions charged at the request of the defendant, was clearly entitled to have the jury properly instructed on this point.

At the request of the defendant the court charged as follows:

"If the jury should determine from the evidence that the sole and only proximate cause of the accident was the wet paint, and that this condition and danger, if any, was known and obvious to the decedent, then there could be no recovery in this case."

While the request does not use the words "assumption of risk," the clear meaning of the request, and what the jury must have understood it to mean, was that if the danger resulting from the wet paint, if any, was known and obvious to the deceased, he could not recover because he must be deemed to have assumed the risk. This was erroneous from every point of view. The Legislature by the amendment in 1910 of section 202 of the Labor Law has in effect eliminated the defense of assumption of obvious risk in cases like the present. It is now provided that:

"In an action brought to recover damages for personal injury, or for death resulting therefrom received after this act takes effect, *owing to any cause, including open and visible defeats,* for which the employer would be liable but for the hitherto available defense of *assumption of risk* by the employé

in the same place and course of employment after the discovery by such employé, or after he had been informed of the danger of personal injury therefrom, *shall not be as matter of fact or as matter of law,* an assumption of the risk of injury therefrom."

See Caboni v. Cott, 149 App. Div. 440, 134 N. Y. Supp. 337, and even under the Labor Law before the amendment the question of the assumption of risk was a question for the jury, and not to be decided by the court as matter of law. The request now under consideration in effect treated it as a matter of law, for the jury were instructed that if the danger was known and obvious "there could be no recovery."

[3] Even if the request could be construed as merely indicating that it was negligent in the deceased, if the defect was known and obvious, to have taken hold of the column, still the charge cannot be upheld, because the question of contributory negligence was for the jury. Even if the deceased knew of the wet and dangerous condition of the paint, and momentarily forgot it, he would not be chargeable with contributory negligence as matter of law. Boyle v. Degnon-McLean Construction Co., 47 App. Div. 311, 61 N. Y. Supp. 1043.

These errors call for a reversal of the judgment. There are others in the record which we should find difficulty in disregarding, but we do not consider it necessary to dwell upon them at length. They are either objectionable because they are based upon the same erroneous construction of the Labor Law that we have already pointed out, or because they invited the jury to speculate that the accident may have happened from some cause of which the evidence contains no suggestion.

Judgment and order reversed, and new trial granted, with costs to appellant to abide the event. All concur.