RAMSDELL et al. v. GOUMIS.

(Circuit Court of Appeals, Second Circuit. November 9, 1915.)

No. 51.

1. MASTER AND SERVANT ⊜⇒286, 289—ACTION FOR DEATH OF SERVANT—QUESTIONS FOR JURY.

The end of a gangway, composed of three planks, which rested upon a barge, dropped off owing to the rocking of the barge caused by passing vessels, and plaintiff's intestate, who was employing in wheeling a barrow load of bricks on board, fell in the river and was drowned. The planks extended three feet upon the barge, but were not fastened. They were long enough to have been extended further. The accident occurred during the lunch hour, when the rules of the employer required a cessation of work, but it did not appear that such rule was for the protection of the workman, or that deceased was ever personally notified of it, or that it was generally observed. *Held,* that the fact that it was not customary to fasten the ends of such ways, or that it was not shown that such accidents had occurred before, did not authorize the court to say as matter of law that the employers were not negligent, but that such question and the question of the contributory negligence of the deceased were properly submitted to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050, 1089, 1090, 1092–1132; Dec. Dig. ⊜⇒286, 289.]

2. NEGLIGENCE ⊜⇒136—ACTIONS FOR NEGLIGENCE—WHEN NEGLIGENCE IS QUESTION FOR JURY.

Whenever there may reasonably be difference of opinion which may fairly be drawn from the facts, the question of negligence is one of fact for the jury.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. ⊜⇒136.]

3. NEGLIGENCE ⊜⇒136—ACTIONS FOR NEGLIGENCE—QUESTIONS FOR JURY—CONTRIBUTORY NEGLIGENCE.

The question of contributory negligence is always for the jury, except where the exact standard of duty is fixed or the negligence is gross and inexcusable.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353; Dec. Dig. ⊜⇒136.]

4. APPEAL AND ERROR ⊜⇒1004—REVIEW—EXCESSIVE VERDICTS.

Appellate federal courts possess no revisory power as to excessive verdicts.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3944–3947; Dec. Dig. ⊜⇒1004.]

In Error. to the District Court of the United States for the Southern District of New York.

Action at law by Pantelis T. Goumis, administrator of the estate of Sarantos Andreas Vlemmas, deceased, against James A. Ramsdell, Henry P. Ramsdell, and Homer S. Ramsdell. Judgment for plaintiff, and defendants bring error. Affirmed.

Robert M. McCormick, of New York City (Joseph F. Murray, of New York City, of counsel), for plaintiffs in error.

Samuel F. Frank, of New York City, for defendant in error.

Before LACOMBE, WARD, and ROGERS, Circuit Judges.

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ROGERS, Circuit Judge. [1] The plaintiff's intestate was employed by defendant as a laborer and while so employed and on July 26, 1913, accidentally met his death. The action is brought under the New York Employers' Liability Act, which imposes liability on employers causing workmen injury "by reason of any defect in the condition of the ways, works, machinery or plant. * *. *" Chapter 352 of the Laws of 1910.

The plaintiff alleged in his complaint that defendants provided the deceased with an unsafe and improper place to work where he was exposed to great and needless danger; that the place was unsafe and dangerous, in that the only way to the barge was over a plank which was unsafe, defective, and improper for use as a passageway, and that it was too narrow and of old, splintered, and uneven wood so that it did not lie firmly and securely; that it was in no way secured, fastened, or attached at either end so as to prevent the same from rocking violently in any motion of the said scow, although defendants knew of the possibility of rocking owing to the oft-repeated and continual passage of large and heavy steamboats along the Hudson river at that point; that the said plank and scaffold was slippery and covered with clay and water, thereby rendering it unsafe to stand upon or walk across; and that the said plank had no side-rails, guards, or protective devices of any kind whatsoever.

At the time of the accident the deceased was engaged in wheeling a barrow loaded with bricks from the shore at the brick works over upon a barge moored near the shore in the Hudson river. To provide a passage over which the bricks might be wheeled three planks had been laid between the dock and the barge making a passageway about 30 inches wide and 30 feet long. These planks were fastened together with a cleat on the bottom, but were in no way secured or fastened at either end. About 3 feet of the gang planks rested on the barge. While the man was on the planks and midway the barge and the dock and engaged in wheeling the bricks, the gangplanks fell, the end on the boat falling into the water, the other end remaining on the dock. The fall of the planks was occasioned by the barge having been rocked by a swell caused by a passing steamer. As the planks went down the man fell into the water and his barrow of bricks on top of him and he was drowned. This was on Saturday at about 12:20 p. m. The men engaged to wheel the bricks had been informed in the morning how many tiers of bricks they were to put on the barge, and that when they had put the indicated number on board they could stop work for the day. The rules provided for the cessation of work between 12 o'clock noon and 12:45 p. m. when the men ate their lunch. The rule was that during that period the men were not to work. The rule to that effect was never posted, and the plaintiff's intestate was never individually informed that he was not to work at that time. The foreman said he "just told the whole bunch of them as they were there." Whether the deceased was in "the bunch" at the time the rule was thus announced does not appear. The rule does not appear to have been made for the protection of workers. The assistant foreman's testimony indicates that his duty was to keep his eyes on the

bricks that were being loaded on the wheelbarrows on the shore for the purpose of rejecting the bad bricks. He was asked specifically what objection there was to the man's going to work during the lunch hour, and he answered:

"Here is the harm. It is that they will go to work and they will put in any kind of brick, and I got found fault with letting them do so."

It is evident therefore that the object of the rule was not to make sure that some one in authority should be present to warn them if it became unsafe to use the gangplanks because of the rocking of the boat. But whatever the purpose of the rule may have been the evidence showed that it had been so generally disregarded that the jury might well have found that it had become a dead letter.

The foreman testified that he had never seen the end of the gangplanks fastened to a barge. A witness called for the defendant, who had been a boat captain for 35 years and had been running boats on the Hudson river for about 50 years and was familiar with the dock where the accident occurred, was asked whether it was customary for gangplanks to be made fast on a barge while it was being loaded with bricks, replied that it was not. He testified that he never had a man drowned in that way. He added on cross-examination that he had seen planks fastened on ferryboats. Another witness similarly called, who had had experience as a boat captain for 23 years and was familiar with the loading and unloading of bricks, testified that it was not customary to have the gangplanks made fast to the barge when the barge was at the dock. He stated also that he never had heard of a man being thrown off one of these planks. Did the manner in which these planks were allowed to rest on the barge show that defendants were negligent?

[2] The court instructed the jury that the burden of proof was on the plaintiff to satisfy them by a fair ponderance of the evidence that the defendant was guilty of negligence in furnishing neither a suitable place nor suitable material with which to do the work. He charged them that the plaintiff claimed that the planks ought to have been fastened so that when the boat rocked it could not have dropped off, and said that on that question the defendants claimed that they did as everybody else did, and that with that kind of a boat and under all the circumstances they were not required to do more than they did. We see no error in leaving that question to the jury to decide. This certainly is not a case where the court could say as a matter of law that the defendants were not negligent. Neither is it a case in which the court could say as a matter of law that the defendants were negligent. What is and what is not negligence in a particular case is generally a question for the jury, and we think it was a question for the jury in this case. Whenever there may reasonably be difference of opinion which may fairly be drawn from the facts the question of negligence is one of fact for the jury to determine. They have found against the defendant. Evidence was introduced for the purpose of showing that it was the universal practice on these brick barges to leave the gangplanks when placed in position unfastened. But irrespective

of whether it is or is not negligent for these planks to be used in this manner, we think the evidence showed conclusively that the planks fell because not placed far enough on the barge to meet the play which might be expected at that place, where defendants knew that the passage of large boats frequently rocked any barges which might be lying at the dock. The planks rested only three feet on the barge; they were long enough to have been given six feet on the barge. It was a fair question for the jury to say whether it was not careless management to place the gangplanks so that they did not have bearing surface enough to meet a sway which might reasonably be expected. The fact that it was not customary to fasten the gangplanks to the brick barges and that injuries had not before happened because of the omission to do so did not constitute an answer as a matter of law to the charge of negligence. See Fletcher v. Baltimore & Potomac R. R., 168 U. S. 135, 18 Sup. Ct. 35, 42 L. Ed. 411 (1897).

[3] It is claimed in this court that the negligence of the plaintiff's intestate contributed to, if it was not the sole proximate cause of, his death. The question of whether the death was occasioned by the man's own negligence was for the jury, and they have answered it by finding against the defendant. The question of contributory negligence is always for the jury except where the exact standard of duty is fixed, or the negligence is gross and inexcusable. And the facts of this case do not bring it within either exception. Moreover, no claim was made in the court below that the court should have decided as matter of law that the negligence of the man caused his death.

[4] The jury rendered a verdict in favor of the plaintiff for $1,500, and the court ordered judgment to be entered for that amount. It is now urged in this court that the amount of the damages for the loss resulting from the death of the plaintiff's intestate is excessive and a reversal is asked on that ground. Whatever the practice in the state courts may be, it is well settled that in the United States courts those of appellate jurisdiction are not possessed of revisory powers as to excessive verdicts but are limited to the inquiry whether the jury was properly directed as to the mode of assessing damages. It is not claimed that in this case any improper instruction was given. No requests to charge were made and refused, and no exception was taken to the charge given. We are unable therefore to consider whether an award of $1,500 for the death of a man only 25 years of age and earning $2.25 a day and leaving a wife and father surviving him was or was not excessive.

The question of whether the man assumed the risk which resulted in his death does not arise under the Employers' Liability Law of the state of New York. The act has abolished the defense of assumption of risk both as a matter of law and as a matter of fact. Thompson v. Levering, 155 App. Div. 534, 140 N. Y. Supp. 769.

We find the assignment of error to be without merit.

The judgment is affirmed.