Plaintiff was a barge captain, thirty-five years old. He had been a sailor all his life and a barge captain in and about New York harbor for twelve years. He was employed by defendant, in charge of a freight boat, one hundred and thirteen feet long, thirty-two feet beam. At the time of the accident the barge was lashed to a tug and was about to be moored at a pier at Hoboken in order to discharge freight. The movements of the barge and tug were under the immediate control of the captain of the tug.
The pier was six to seven hundred feet in length and had seven gangways. The barge was about to be pulled up to No. 2 gangway. Defendant's foreman on the pier, who was directing the movements of the tug captain, gave directions to plaintiff to get out his line on to a cleat indicated by him on the pier at the further side of No. 3 gangway, so as to make the forward door of the barge stop at No. 2 gangway. *Page 157 
The line was a five-inch hawser. Plaintiff stood aft near a post or bitt, threw the loop or eye on the end of the line over the proper cleat when the barge was ten or twenty feet out and as the bitt approached the cleat he took in his line around the bitt, thus hauling the barge into position. The dock foreman, as the barge came along the pier, decided that the freight could be more satisfactorily handled at gangway No. 1, which was about ninety-two feet from gangway No. 2 in the direction in which the barge was moving. He directed the tug captain to proceed instead of slowing down and stopping. Plaintiff was unaware of this change in directions. If he had been given orders to stop at No. 1 gangway, he would have put his line on the middle cleat between No. 2 and No. 3 gangway, about eighty feet from the cleat used to bring the barge up to No. 2 gangway. The dock foreman might easily have told him to let go his line or throw the eye off the cleat or make ready to pull up at No. 1 gangway. The barge moved ahead. In his effort to bring the boat alongside of gangway No. 2 plaintiff threw a bight as it was passing the cleat, i.e.,
tossed a loop of the rope over the cleat, and started to take a turn around the bitt.
The record does not indicate very clearly to a landsman exactly what happened then as plaintiff's testimony was given with the aid of a model not produced in this court, but the result of it was that, as plaintiff was getting himself in position to get the turn around the bitt, and was paying out the line, he raised his left foot from the deck. The part of the heavy hawser that was coiled up on the deck, as the barge was moved on past the cleat by the tug, was drawn out and suddenly turned and formed a kink which looped around plaintiff's left leg and took his foot off against the bitt.
The action was brought under the Federal Employers' Liability Act, and it is conceded that defendant was a *Page 158 
common carrier employed in interstate commerce, and that plaintiff was injured while employed in such commerce. The negligence of a co-employee is not a defense under the Federal act (Ches. O. Ry. Co. v. De Atley, 241 U.S. 310), nor is the contributory negligence of the plaintiff a complete defense. (Seaboard Air Line Ry. v. Tilghman, 237 U.S. 499.)
It was, therefore, necessary for the plaintiff to establish only that his injuries were due to lack of proper care on the part of the dock foreman. The Appellate Division has reversed on the law a judgment for plaintiff and dismissed the complaint on the ground that "there was no negligence of any employee of the defendant which caused the accident or contributed to it," and that the change in directions had no causal connection with the accident. We think that this was error. The work of plaintiff was necessary and usual for the purpose of placing the barge alongside the pier at the gangway selected by the dock foreman, and he was under the direction of the dock foreman in that regard. Men unfamiliar with the details of practical seamanship may find it difficult to visualize the simple operation of mooring a barge, but it seems clear that a jury might say that the change in the directions as to the place of tying up the barge had everything to do with the case; that such change, made without plaintiff's knowledge and when he expected that the barge would gradually slacken its speed and stop, created an entirely different and unanticipated combination of powerful and dangerous forces in which plaintiff was entangled and injured; that a coil of five-inch hawser, turning rapidly and unexpectedly as it was being payed out is an imminent menace to the safety of those handling it; and that the dock foreman did not exercise proper care when he created this danger without warning plaintiff.
That the accident, as the opinion of the learned court *Page 159 
below states, "could not have happened if he had kept his foot on the deck" may be true. It does not follow that plaintiff cannot recover. He may have contributed to his own injury by failing to exercise reasonable care for his own safety in the presence of known dangers. The jury may have so found, for they were directed that "if that injury was caused in part by his own negligence, then the amount of his damage must be diminished just exactly in proportion to the amount of negligence attributable to him." This is not a case where as matter of law "his duty is as clear as its performance is easy." (Great Northern Ry. Co. v. Wiles,240 U.S. 444.) The rule of law was correctly stated by the trial court, and the verdict is amply sustained by the evidence.
As the complaint was dismissed by the Appellate Division on the ground that there was no evidence of negligence, the reversal was upon the law. (Code Civ. Pro. § 1338.) The judgment of the Appellate Division should be reversed, and that of the trial court affirmed, with costs in this court and in the Appellate Division.
HISCOCK, Ch. J., CHASE, COLLIN, HOGAN and CRANE, JJ., concur; McLAUGHLIN, J., not sitting.
Judgment reversed, etc.