## LEHIGH VALLEY R. CO. v. SCANLON.

(Circuit Court of Appeals, Second Circuit. February 13, 1919.)

### No. 157.

1. MASTER AND SERVANT ⬩⇒286(33)—EMPLOYERS' LIABILITY ACT—NEGLIGENCE.

In action under Employers' Liability Act (Comp. St. §§ 8657–8665), evidence that plaintiff switch tender was injured by a freight engine just after passing through a string of cars which, contrary to a posted rule, etc., obstructed his passageway, made defendant's negligence in not providing a safe passageway, a jury question.

2. NEGLIGENCE ⬩⇒101—EMPLOYERS' LIABILITY ACT—CONTRIBUTORY NEGLIGENCE.

In action under the Employers' Liability Act (Comp. St. §§ 8657–8665), plaintiff's contributory negligence does not defeat his cause of action, but only decreases the damages.

3. MASTER AND SERVANT ⬩⇒286(33)—EMPLOYERS' LIABILITY ACT—JURY QUESTION.

In action under Employers' Liability Act (Comp. St. §§ 8657–8665), evidence that a freight engine was unexpectedly operated without warning on a track next to which stood a string of cars through which it was known plaintiff switch tender would have to pass to perform his duties, *held* to make defendant's negligence in so operating the freight engine a jury question.

4. MASTER AND SERVANT ⬩⇒137(6)—EMPLOYERS' LIABILITY ACT—NEGLIGENCE.

Ordinarily it is not negligent for a switching engine in a railroad yard not to give warning by bell or whistle to employés familiar with the operation of the yard.

5. MASTER AND SERVANT ⬩⇒286(33)—EMPLOYERS' LIABILITY ACT—JURY QUESTION.

In such case, evidence *held* to make defendant's negligence, in not keeping a lookout on the engine, a jury question.

6. MASTER AND SERVANT ⬩⇒217(29)—EMPLOYERS' LIABILITY ACT—ASSUMPTION OF RISK.

An employé does not assume a risk due to the negligence of his fellow employés, unless he is aware of it, or the risk is so obvious that an ordinarily prudent person would know and appreciate it.

7. MASTER AND SERVANT ⬩⇒288(3)—EMPLOYERS' LIABILITY ACT—ASSUMPTION OF RISK.

In action under Employers' Liability Act (Comp. St. §§ 8657–8665), evidence that plaintiff switch tender was injured by a freight engine just after passing between a string of cars which obstructed his passageway, etc., *held* to make his assumption of risk a jury question.

8. MASTER AND SERVANT ⬩⇒289(30)—EMPLOYERS' LIABILITY ACT—CONTRIBUTORY NEGLIGENCE.

In action under Employers' Liability Act (Comp. St. §§ 8657–8665), evidence that plaintiff switch tender was hit by a freight engine just after passing between a string of cars which obstructed his passageway, etc., made his contributory negligence a jury question.

---

⬩⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Western District of New York.

Action by John W. Scanlon against the Lehigh Valley Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Kenefick, Cooke, Mitchell & Bass, of Buffalo, N. Y. (James McCormick Mitchell, of Buffalo, N. Y., of counsel), for plaintiff in error.

Henry W. Brush, of Buffalo, N. Y., and A. G. Newcomb, of Cleveland, Ohio (Henry W. Brush, of Buffalo, N. Y., of counsel), for defendant in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The defendant in error, while in the employ of the plaintiff in error, a railroad corporation engaged in interstate commerce, was injured on the 10th of December, 1915, and has maintained this action successfully below, recovering damages for a substantial sum. The plaintiff in error maintains a large freight yard at Sayre, Pa., where it has an extensive and complicated system of storage, classification, and switching tracks.

The defendant in error sustained his injuries in what was known as the lower yard, which is approximately 200 feet south of the Sayre depot. The tracks at this point run generally in a northerly and southerly direction, but looking toward the north there is a considerable curve. There are east-bound yards and west-bound yards, with which the defendant in error had to do, and with which we are concerned; one lying partly toward Waverly, in the state of New York, and partly toward Sayre, in Pennsylvania. In other words, the yards cross the state lines.

The defendant in error had been employed in various capacities since 1889 in the service of the plaintiff in error, and since November, 1913, as a switch tender in the yard in question. There was a switch tender's shanty located between the express track and storage track, wherein there was installed a telephone. Engines upon east-bound passenger trains were changed at Sayre, and one of the duties of the defendant in error was to superintend this change of engines. Engines intended for relief of the east-bound trains were placed upon the scale track, and it was the duty of the defendant in error to switch the retiring engine on the various crossovers to the roundhouse, and then make secure the switches to the main track, so that through trains could be operated thereon safely. It was also his duty to go to and from the switch tender's shanty, using the telephone to speak with the next station, Athens, there to learn of the location of the west-bound trains destined for the Sayre yards, and to arrange by telephone as to their disposition upon arrival. Thus, in the regulation of the traffic, he was frequently obliged to pass over the tracks to and from the shanty. There were located immediately in front of the switch tender's shanty, and between it and the east-bound main track, two switch tracks, one known as the express track, and the other as a scale track, over which he was obliged to pass. It appears that for some time there was a sign on the outside of the shanty reading as follows:

"To All Concerned: Never permit cars in front of this shanty at any time, as the telephone is here, for the convenience of yardmasters, conductors, and trainmen."

For some days previous to the day of his casualty, there was maintained upon the scale track adjacent to the shanty, a train of cars without an opening between them, and this made it necessary for the defendant in error to mount and cross over the cars whenever he desired to cross the railroad track in the performance of his duty. The defendant in error spoke to the yardmaster, Schaeffer, calling his attention to this condition, and also to Miller, the conductor of the coach crew, and to Fitzgerald and McCabe, all men in authority, complaining of the conditions, and received promises that this inconvenience would be removed.

On the morning of December 10th, while the defendant in error was putting a relief engine on the north end of the scale track, approximately at the point marked "clearance post," Cafferty, a yard conductor in charge of an engine hauling a carload of horses, came down in the direction of the depot upon the east-bound freight leader, which is the track immediately east of the west-bound main train, left his engine, and told defendant in error that he wanted to get across in the hill track before No. 8 train came in. The defendant in error then said, "You won't be coming back"? to which Cafferty replied, "No; we will stay in the clear over there," and the defendant in error stated "Go ahead." Cafferty, in making this maneuver of the car containing the horses, pulled the string of cars from the scale track and placed them on the express track, but did not make a cut or opening in front of the shanty, and left them in such a position that they blocked the pathway of the defendant in error to and from the shanty. After train No. 8 had come in and gone, and the defendant in error had fulfilled his duties in regard to it, he saw a freight train coming in the yard from the south. It became his duty then to inform the west-bound yard by telephone and secure a track for this train. He climbed over the cars, thus upon the express track blocking his passage to the shanty, and called up the west-bound yard. As he went across the tracks to meet the incoming freight train, he was again obliged to mount the string of cars which blocked the track. He did so, mounting between the bumpers of two of the cars, passed over, turned, and slowly dismounted, with his back to the yard and his face to the cars. As he reached the ground between the express track and the scale track, he says he looked south, where he last saw McCafferty with his engine, to see if he could see anything of him, and then turned to look north upon the main track, to see if the milk train was approaching thereon, whereupon he was struck by Cafferty's engine, which, unseen by him, left its position far to the south of where he was, proceeded north, and was now returning south along the scale track, tender first, without warning of its approach by bell or whistle. He was struck and run over by the engine, receiving the injuries for which he sues.

The District Judge submitted the question of the negligence of the plaintiff in error to the jury, submitting to them, first, was the plaintiff in error negligent in failing to provide and keep a suitable passage-

way from the switch shanty to the main track? and, second, was there negligence in failing to give a warning of the approach of the engine after the conductor, Cafferty, told him that the engine would remain on the hill track in the clear? and, third, was there negligence in failing to have some one aboard the engine as it approached and passed adjacent to the shanty, who occupied a position for observation of persons crossing the track so as to give warning of its approach? The court also submitted the question of the assumption of risk of the defendant in error and that of his contributory negligence to the jury.

[1-4] The District Judge, in submitting the question to the jury, permitted the jury to find the plaintiff in error negligent in failing to exercise reasonable care in supplying the defendant in error with a reasonably safe place to work, upon the theory that the way to and from the shanty to the main track was a place for him to work in the performance of his duty, and the failure to provide an opening in the cars adjacent to the shanty, thus requiring the defendant in error to mount upon the coupling or bumpers of the cars to pass over the tracks, was a violation of a duty owed to the defendant in error. While the language of the charge is broad, we find no justification for the complaint of the plaintiff in error in thus submitting this issue to the jury. To violate the rule posted on the shanty, which was promulgated by the plaintiff in error, might be found by the jury to be negligent, and the failure to provide a passageway, thus rendering it hazardous for the employé, making possible the only other alternative, namely, to mount the cars and thus cross the tracks, provided the defendant in error with an unsafe way to pass in the performance of his obligations.

Since this action is maintained under the federal Employers' Liability Law (Act April 22, 1908, c. 149, 35 Stat. 65 [Comp. St. §§ 8657–8665]), a violation of the rule referred to by any employé would be negligence for which the master would be responsible. Indeed, in the absence of a rule forbidding the standing of cars on the tracks adjacent to the shanty, since it was the obligation of the defendant in error to pass across the tracks in going to and from the shanty, it was the duty of his employer, the plaintiff in error, to provide reasonable way of access to it, such as would avoid the hazards of mounting upon the bumpers of the cars. The fact that the cars which blocked the passageway were moved that morning from the scale track to the express track would not relieve the plaintiff in error from responsibility. The passageway, in either case, was blocked, and this was a direct violation of the rule sought to be enforced by the plaintiff in error. It was the duty of the plaintiff in error to use reasonable care to so conduct its business as not to subject its servants to unnecessary danger in the prosecution of their work, and to guard against accidents in the performance of his work, which, in the exercise of reasonable care, could be foreseen and guarded against. Union Pacific Co. v. Hadley, 246 U. S. 330, 38 Sup. Ct. 318, 62 L. Ed. 751; Maguire v. Barrett, 223 N. Y. 50, 119 N. E. 79; Del Sejnore v. Hallinan, 153 N. Y. 274, 47 N. E. 308.

We are of the opinion that this negligent act was a proximate cause of the accident. In order that it may be said to be the proximate cause,

we believe the obligation to mount the cars, cross the bumpers, and then descend upon the opposite side, with his face toward the car holding on the grabiron, may well be said to be what ordinarily or probably caused the injury to defendant in error, resulting from a neglect of duty which the jury has charged against the plaintiff in error. St. Louis Terminal Co. v. Schuerman, 237 Fed. 2, 150 C. C. A. 203. Nor can it be claimed that the plaintiff in error is absolved from blame because the defendant in error was negligent in surmounting the blockade in the manner he attempted. If the negligent act of the plaintiff in error concurred with the negligent act of the defendant in error and contributed as a cause to his injury, the effect of the federal Employers' Liability Act eliminates this element of proximate cause. Spokane R. R. Co. v. Campbell, 217 Fed. 524, 133 C. C. A. 370. In other words, contribution by negligent act on the part of the defendant in error in bringing about his injury does not defeat his cause of action under the Employers' Liability Act, but only lessens the damages, and if the negligent act on the part of the plaintiff in error be established, the statute cannot be nullified by calling the act of the defendant in error the proximate cause and thus defeat it. Negligence of the plaintiff in error was an efficient concurring proximate cause of the injury, and makes the plaintiff in error liable, even though there may be other efficient concurrent proximate causes. Sweet v. Perkins, 196 N. Y. 485, 90 N. E. 50.

We think the facts here fully justified the court in submitting this charge of negligence to the jury. Further, under the circumstances disclosed by this record, we believe the District Judge was required to submit to the jury the claim of negligence in failing to give some warning of the approach of the yard engine while passing on the track parallel with the blocked track over which the defendant in error passed while mounting the cars. Ordinarily there is no obligation upon the part of the operator of a switching engine, constantly engaged in moving to and fro in a railroad yard, to give warning by ringing the bell or sounding a whistle for the purpose of notifying employés who are familiar with the operation of the yard. Aerkfetz v. Humphreys, 145 U. S. 418, 12 Sup. Ct. 835, 36 L. Ed. 758. But here it cannot be said that the operation of the engine was under ordinary circumstances. Cafferty knew of the duties of the defendant in error, and he knew the track was blocked. He secured permission to take a carload of horses on the east-bound freight leader, as indicated, and stated he would keep in the open on the hill track. Having changed his maneuver, and while proceeding north from the hill track, the immediate parallel track to the express track, he should have given some warning of his approach. For this neglect, the employer was responsible. Colasurdo v. Central R. R. of N. J. (C. C.) 180 Fed. 832, affirmed 192 Fed. 901, 113 C. C. A. 379. At least, the jury would be justified in saying that operation under these circumstances was not the usual and ordinary moving to and fro of a freight engine in a freight yard.

In making this last maneuver with his engine, Cafferty came north, not only without the knowledge of the defendant in error, but came in between No. 8 and the milk train and across the path to the shanty,

where he knew the defendant in error would be likely to pass at any time in the performance of his duties.

[5] The further act of negligence, which the court by its charge permitted the jury to find, was that there was negligence in the failure of some one on the locomotive, proceeding with tender first, to assume a place for observation, either on the cab or tender, so as to take heed of, or give warning to, any person crossing the tracks. From the record it appears that nobody in charge of the engine and tender was on the lookout for dangers ahead. It undoubtedly was the duty of the engineer to keep a continuous and careful lookout on the track ahead of his engine at all times, while his engine was in motion. The safety of any person lawfully upon or near the tracks demanded this, and the jury could charge the employés of the plaintiff in error with neglect for failure in this regard. It appears that the engineer was at the engine cab across from the side where the defendant in error was struck, and therefore could not see the defendant in error stepping down from the cars, which he was obliged to mount in making his way from the shanty. Cafferty was riding on the pilot of the engine in a place where he could not see the defendant in error. No one was looking on the side where the defendant in error was struck. While there was no duty on the part of the railroad company to maintain a lookout ahead of the engine while proceeding in the yard ordinarily, still, because of the special circumstances here, due to Cafferty's statement that the engine would remain in the clear, and then shortly thereafter changing the movement, the jury could say the defendant in error should have had a warning signal. Cafferty's knowledge that there was no passageway left on the express track, together with these circumstances required greater watchfulness on his part and that of the engineer.

[6, 7] Nor can we say that the defendant in error assumed the risk as a matter of law. An employé, maintaining a cause of action under the federal Employers' Liability Act, does not assume a risk attributable to the negligence of his coemployés until he is aware of it, unless the risk is so obvious that an ordinarily prudent person in his situation would know and appreciate it. Erie v. Purucker, 244 U. S. 320, 37 Sup. Ct. 629, 61 L. Ed. 1166. While the defendant in error may be said to have known that it was wrong for the other employés to violate the rule in failing to keep a passageway between the cars, thus to afford him a way to go to and from the points he was obliged to reach in the performance of his duties, we cannot say, as a matter of law, that he appreciated the danger, nor can we say that he was obliged to stop in the performance of his duties, particularly since he had received some promises to remedy the conditions as they existed. It is not the obviousness of a physical situation or condition which makes out a case of assumed risk; it is the obviousness of danger which the physical condition or situation produces. Seaboard Air Line v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; Larson v. N. E. R. R. Co., 223 N. Y. 14, 119 N. E. 92.

[8] The District Judge, as he was obliged to do upon this record, submitted the question of contributory negligence to the jury as a

question of fact. Its apportionment of damages indicated an intelligent consideration of this question. We think no error was committed in refusing to charge the defendant in error with guilty contributory negligence as a matter of law.

Judgment affirmed.

HOUGH, Circuit Judge (concurring). A railway man, experienced both in his work generally and as to the locality of performance, was injured because, while descending from a car at rest, he projected the posterior portion of his body into the path of a moving engine tender on the next parallel track. The descent aforesaid was necessary, because the still train to which the car belonged had not been "split" at the point where the workman wished to cross the track. This failure to keep open a path across said track was in contravention of the "sign" mentioned in the court's opinion. In addition to the quoted words, that sign concluded with the legend "By Order of Committee." But what committee framed it, or what connection it had with the railroad company's management, is unknown on this record. The engine whose tender struck plaintiff below, had gone to the other end of the yard from about the place of accident, and it came back unexpectedly, though the conductor had told plaintiff it would not.

On these facts we hold a verdict justified which in effect declares that the employing railroad was negligent in failing to supply a safe place to work, and for letting the engine come back on the track next the one plaintiff was climbing across; also that plaintiff did not as matter of law assume the risk of being hit in the manner described.

Probably there are not and never will be two accident claims that cannot be distinguished; something can always be suggested and called a question of fact; but whether any real difference exists depends upon the standard of care adopted by the court—to divide matters sufficiently debatable for the jury from those so certain as to be reserved for the judge.

The present standard in this circuit seems to me this: If the ingenuity of counsel can suggest anything done or omitted by an alleged tort-feasor, which, if differently performed or not omitted, would have prevented injury, the opinion of the jury may be taken as to the causal connection between such omission or commission and the proven physical hurt. In effect there is no standard other than that created by each jury for its own immediate use.

While this condition was developing, I could not agree with the court, but further dissent would be mere faction, after our recent decisions, of which a few are New York, etc., Co. v. Vizvari, 210 Fed. 118, 126 C. C. A. 632, L. R. A. 1915C, 9; Alpha Co. v. Curzi, 211 Fed. 580, 128 C. C. A. 180; New York, etc., Co. v. Thierer, 221 Fed. 571, 137 C. C. A. 295; Ramsdell v. Goumis, 228 Fed. 864, 143 C. C. A. 262; Lehigh, etc., Co. v. Kilmer, 231 Fed. 628, 145 C. C. A. 514; Penn., etc., Co. v. Groves, 231 Fed. 663, 145 C. C. A. 549; New York, etc., Co. v. Salkaukus, 238 Fed. 778, 151 C. C. A. 628; Schunnemunk Co. v. Sbaratta, 239 Fed. 716, 152 C. C. A. 550; Penn., etc., Co. v. Skerman, 247 Fed. 269, 159 C. C. A. 363.

The reasoning from causes to effects, and the views as to normal human responsibility for one's own acts, contained in the decisions cited, amply support the result in this case, to which, as fairly representing ruling authority in the Second circuit, I perforce agree.