## SEVERN v. PHILADELPHIA & R. RY. CO.

(Circuit Court of Appeals, Third Circuit. June 28, 1922.)

No. 2853.

1. **Appeal and error ☞843(2)—Question of assumption of risk not reached, where dismissal is at end of plaintiff's case.**

Assumption of risk being a defense to be proved by defendant, the question thereof is not reached, where the servant's action is dismissed at the end of his proof for not making out a prima facie case.

2. **Master and servant ☞265(3)—Servant held not to have sustained burden of showing act causing injury by car.**

Plaintiff, whose duty in a switchyard was to go to the track onto which a car was next to be switched, according to signal, to be observed by him, of the conductor to a switchman, whose duty it was to throw the switch to the proper track, by showing merely that, after switching of a car onto track 2, the next signal was for switching to track 6, and that while proceeding there he was struck by a car switched onto an intervening track, does not sustain his burden of proving affirmatively that his injury was occasioned by negligence of the company; he not showing what act of it, if any, caused the injury.

In Error to the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Action by Millerd C. Severn against the Philadelphia & Reading Railway Company. Judgment of nonsuit, and plaintiff brings error. Affirmed.

Joseph A. Shay, of New York City, for plaintiff in error.

Edward L. Katzenbach and Katzenbach & Hunt, all of Trenton, N. J., for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. This is an action against a railroad company to recover for personal injuries sustained by an employé while both were engaged in interstate commerce. (Employers' Liability Act, 35 Stat. 65; Comp. St. §§ 8657–8665.) The District Court entered judgment of nonsuit. The case is here on the plaintiff's writ of error.

The Belmont yards of the defendant company at Philadelphia are used for making up freight trains. They contain a ladder-track from which other tracks branch off to the right, being numbered consecutively from one to eight. It was the practice, when a train with cars to be distributed came to the yards, to place it on track 1. Certain cars were then cut out of the train, pulled back on the ladder-track, moved forward, kicked on one of the branch tracks and coupled with other cars already there, having the same general destination. This work was done by a switching engine and a switching crew consisting of an engineer, fireman, conductor and three brakemen. The actors in this accident were the conductor and two brakemen.

The method of distributing cars was this: Upon a signal from the conductor to one brakeman, indicating on which branch track a movement was to be made, this brakeman—called the switchman—would throw the switch from the ladder-track to the proper branch track. The other brakeman was the plaintiff. Observing the signal by the conductor to the switchman, he was required to go to the track indicated, await the cars, and when they came to rest, open the knuckle of the coupler of the last car so that it might couple by impact with the next draft coming on the same track.

The signal was of a proposed car movement; it was not a warning of danger.

The last completed movement before the accident was on track 2. The plaintiff, having opened a knuckle of a coupler, observed the conductor, who was standing on track 1, about one hundred feet away, signal the switchman that the next cut was to go on track 6. Thereupon, the plaintiff, proceeding toward track 6, walked between cars on tracks 2 and 3, passed through an opening between the ends of cars on track 3 and continued to walk a short distance between tracks 3 and 4. He turned and looked for the cars on the ladder-track, but did not see them. Continuing to walk, he looked again, and again he did not see them. He walked a little farther and was turning to cross track 4 and also to look for the cars on the ladder-track when the forward

car of the draft, having come on track 4, struck him and inflicted the injuries of which he complains.

At the time of his injury the plaintiff's view of the conductor—if the conductor had not changed his position after signalling the switchman—was obstructed. His view down track 4 to the ladder-track was unobstructed. The accident happened in the early morning but after daybreak and after signalling by lights had been discontinued.

The plaintiff was experienced in his work and familiar with the yard. In the switching movements he was required to pass over the tracks continually.

[1] The trial court was of opinion that the plaintiff had failed to make out a prima facie case of negligence and that, in view of Connelley v. Pennsylvania R. Co., 228 Fed. 322, 142 C. C. A. 614, the plaintiff's injury was the result of a risk which he had assumed when entering his employment, and accordingly entered judgment of nonsuit.

[2] We shall lay aside the question of assumption of risk intimated by the learned trial judge and raised by the plaintiff on one of the assignments of error for the reason that—being a defense provable by the defendant—it was not reached before the case was disposed of by nonsuit. Kanawha Railway v. Kerse, 239 U. S. 576, 581, 36 Sup. Ct. 174, 60 L. Ed. 448. The sole question therefore is whether there was sufficient evidence of the defendant's negligence to submit to the jury. Of the many allegations of negligence in the complaint the only one which the plaintiff attempted to support by evidence or argument is the one charging the defendant with failure to notify the plaintiff of the movement which occurred on track 4. If failure to give such notice amounted to negligence, it can be so only because the defendant owed the plaintiff the duty of notifying him, and because the defendant left that duty undischarged and unfulfilled. Sweeny v. Railroad Co., 10 Allen (Mass.) 368, 87 Am. Dec. 644. Whether the defendant owed the plaintiff such a duty is to be determined by what a reasonable and prudent person would ordinarily have done under the circumstances. Railroad Co. v. Jones, 95 U. S. 439, 441, 24 L. Ed. 506. Our difficulty in applying this rule to the instant case is the dearth of evidence showing just what the circumstances were, or, in other words, the lack of evidence showing the cause of the accident except as it was affected by the plaintiff's failure to exercise for his own protection a care commensurate with the great risks of his employment.

The position of the plaintiff, however, is that the case should have been submitted and the jury allowed to draw the inference—

"either that the switchman disregarded or misunderstood the signal and switched the cars down track 4 instead of track 6; or he left the switch for No. 4 track open; or that the conductor after giving a signal for track 6 changed his orders and signalled to the switchman that the cut was to go down track 4; and that the change was made without notifying the plaintiff."

The contention of the plaintiff that the evidence will sustain any one of these four wholly different inferences of negligence rather persuades us that the plaintiff has not sustained the burden of proving by affirmative evidence what negligence of the defendant, if any, occa-

sioned his injury. The fact of injury, of course, is not evidence of negligence; nor is the possibility that the injury might have occurred in one of four ways proof that it did occur in one of those ways; nor is it proof that it did not occur in some other way. Upon the hypothesis that the conductor changed his order without notifying the plaintiff thereof, the plaintiff has built his argument with reference to the duty of warning which he claims the defendant owed him, or, stated in his own words:

"It is the contention of the plaintiff that if the orders were changed the conductor was bound to notify the plaintiff of the change. If the conductor thought it necessary to countermand his original orders, the change should have been communicated to the plaintiff or some notice should have been given him."

The trouble with this argument is, there is nothing in the testimony which shows that the conductor did change his orders. So also there is nothing which suggests that the switchman either misunderstood or disregarded the original order; or had left open the switch for track 4; or, perchance, that the switch itself was defective and opened when it should have remained closed; or any other reason why the draft of cars went on track 4 instead of on track 6.

We are of opinion that the plaintiff, in failing to show what act of the defendant, if any, caused his injury, has not sustained the burden which the law imposes upon him of proving affirmatively that his injury was occasioned by the negligence of the defendant.

The cases upon which the plaintiff relies,—Norfolk & Western Ry. Co. v. Earnest, 229 U. S. 114, 33 Sup. Ct. 654, 57 L. Ed. 1096, Ann. Cas. 1914C, 172; Scarlett v. D., L. & W. R. Co., 222 N. Y. 155, 118 N. E. 513; Lehigh Valley R. Co. v. Scanlon, 259 Fed. 137, 170 C. C. A. 205,—being clearly distinguishable from the case at bar, do not overturn this fundamental rule of law.

The judgment below is affirmed.