### GRAND TRUNK WESTERN R. CO. v. BOYLEN.
### No. 5409.

Circuit Court of Appeals, Seventh Circuit.
Jan. 17, 1936.

Frederick C. Crumpacker and Edwin H. Friedrich, both of Hammond, Ind., for appellant.

Joseph D. Ryan and Edmund M. Sinnott, both of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and ALSCHULER, Circuit Judges.

ALSCHULER, Circuit Judge.

The action was against appellant under the Federal Employers' Liability Act (45 U.S.C.A. §§ 51–59) to recover damages for injuries sustained by Boylen while he was engaged in an interstate switching movement for appellant, his employer. Judgment went against the employer, which appeals.

Boylen's injury occurred on appellant's main switch track which runs northerly and southerly into and through the yard of the Berkey & Gay furniture factory at Grand Rapids, Mich., extending about three-fourths of a mile southerly thereof to serve also other factories. The track enters the factory yard from the north through gates, a short distance south of which is a coal hopper or pit. About 150 feet south of the coal hopper on this main switch track there is a switch from which spur track No. 1 is given off, running southerly from the switch.

The accident occurred about 100 feet south of the coal hopper. The space between the east rail of the switch track and the Berkey & Gay buildings to the east varies from less than 7 feet to slightly over 8, at the place of the accident being somewhat less than 7. The intervening space is concreted and used as a shipping platform for Berkey & Gay.

Some time before the accident, the Berkey & Gay shipping clerk had given appellant an order for a furniture car to be spotted at a certain Berkey & Gay door on spur track No. 1. Appellant proceeded to execute the order, and its locomotive pushed a furniture car into the Berkey &

Gay yard. A gondola car, which was standing on the main track between the hopper and the switch, was in the way of the furniture car's destination, and Boylen, upon direction of his switch foreman, coupled it to the furniture car for the purpose of its being kicked down the main track beyond the switch.

The switch foreman walked to the switch to throw it for the gondola to pass south on the main track, and Boylen mounted the stirrup of the gondola to uncouple it when in his judgment the momentum of the train was sufficient to enable the gondola, on being disconnected, to be kicked past the switch, so it would be clear of the switch and of the furniture car as it was being pushed onto the spur track.

Boylen was near the hopper when he got onto the stirrup or lowest rung of the ladder on the east side of the gondola. The train moved with rapidly increasing speed to give the required momentum for kicking the gondola, its speed at the time of the accident being about 12 miles an hour. Boylen was bending over to lift the handle for drawing the pin and uncoupling the gondola from the furniture car, when his backwardly protruding buttock contacted with an obstruction upon the loading platform, and he was knocked from his footing on the stirrup, falling to the concrete platform and sustaining the injuries complained of.

The obstruction which knocked him from the stirrup was a loaded factory truck which was standing on this loading platform near the east rail, extending to within 10 or 12 inches of the stirrup.

Appellee contends that the long presence of the truck at this place, without his knowledge, made this place unreasonably unsafe for working. Appellant maintains that this truck had long been there and constituted a danger so obvious that appellee assumed the hazard of it.

It seems that a year or more before this occurrence obstructions more or less similar were quite occasionally permitted by the furniture people to be on this loading platform, as well as on the westerly side of the track, so close to the tracks as to endanger the safety of the men operating trains there, and that appellant had complained of it several times, with the result that for about a year no such obstructions were there. It appears that while appel-lee had been in that yard occasionally for a number of weeks before the accident he had not noticed the truck, and that for a long time, if ever, before, he had not participated in such a switching movement in this particular place.

It was testified for appellant that this was a small factory truck, and that it had stood at this same place for some weeks next before the accident. While it is true that appellee was an old switchman who had worked for appellant for years, and had quite often prior to the accident been on these switch tracks, yet, under the particular circumstances, this was not an obstruction whose presence at that time and place he could reasonably have been expected to know or anticipate; or even if he had seen it before, to have held it in his mind while performing such a service where his attention must of necessity have been centered on the work in hand. While he had known of the earlier complaints of obstructions, he also knew that the cause of them had long been removed; and nothing appears in the evidence which would reasonably have caused him then to suspect the existence there of any such dangerous obstruction.

The kicking operation requires dexterity and skill and close and undivided attention; and while Boylen was standing on the stirrup, with his back toward the loading platform, and necessarily stooping down to uncouple the cars, he could not reasonably have been expected to look about for dangerous obstructions in this supposedly safe place.

In view of the particular work in which he was then engaged, we do not believe that as a matter of law he can be charged with the assumption of the danger and risk from this obstruction, whose presence at that time and place he had no reason to anticipate. Kanawha, etc., R. Co. v. Kerse, 239 U.S. 576, 36 S.Ct. 174, 60 L.Ed. 448; Yazoo & Miss. V. R. Co. v. Wright, 235 U.S. 376, 35 S.Ct. 130, 59 L.Ed. 277; Lehigh Valley R. Co. v. Scanlon (C.C.A.) 259 F. 137; Cincinnati, N. O. & T. P. R. Co. v. Hall (C.C.A.) 243 F. 76.

That the truck and platform were not appellant's property can make no material difference. It was appellant's duty to provide for its employees a safe place in which to work. Lehigh Valley R. Co. v. Scanlon, supra; Cincinnati, N. O. & T. P. R. Co. v. Hall, supra.

Railroad employees who are required to operate trains cannot be held to know whether or not title to the right of way is in the employer, or whether obstructions long suffered to remain so close to the tracks as to endanger employees in the proper discharge of their duties were owned by, or placed there by, the employer or by another. If such dangerous obstructions have been there sufficiently long so that the employer, in the exercise of ordinary care, ought to have known of their presence, a finding is well justified that the employer has not provided a reasonably safe place for working.

The engineer and foreman testified that this truck had been at this same place on the platform for a number of weeks. That it was sufficiently close to the track to be dangerous to employees who, in the line of their duty, were making a flying switch to kick a car upon another track, as Boylen was then doing, is abundantly manifest from the fact that Boylen contacted with it.

It is contended for Boylen that the foreman, who had directed him to kick the gondola, and was at the switch about 50 feet from the place of accident, was in full view of the entire operation and fully realized the danger in which Boylen was placed, and that under the circumstances it was his duty to have warned Boylen, so that he might have straightened himself up against the side of the car, and thus probably have avoided contact with the truck; and that the foreman's failure to give such warning was negligence for which, under the Federal Employers' Liability Act, the employer is responsible.

The understanding of the unusual situation here, and of the foreman's relation to it, may be helped by some more specific recital of the foreman's testimony given on behalf of appellant. He testified he was conductor or foreman of the switch crew and had worked thereabout for about 14 years; that it was necessary to move the gondola along the main track past the switch in order to spot the furniture car on the spur track; that just before the accident he told Boylen to couple up the cars, and then went along the east side of the track to the switch, and saw the truck that struck Boylen; that it had been there for several weeks in the same position it was that morning, and he had observed it there five or six times a week for several weeks; that he threw the switch to let the gondola go down the main, and intended to throw it so the furniture car would go to spur No. 1; that he was about 80 feet from the gondola when he threw the switch; that he saw the cars start south, and was looking at them when the gondola was kicked; that he had nothing to do but stand there and wait until the gondola went by; that he was standing by the switch and gave Boylen a kick signal to cut off one, and the gondola then started south; that while the gondola was coming he could see Boylen standing on the stirrup, and saw Boylen struck by the corner stake of the truck; that Boylen had just given a signal and was bending down, ready to cut the car off, when he was struck; and that the only time the witness shouted or called to Boylen was when he told Boylen to couple up, before the witness walked to the switch; that "the stirrup is under the car. * * * You have to put your hand down and hold on with one hand and get out far enough to get the lever. * * * When I told him to couple up and cut off one, it was his duty to draw the pin out when the slack was in the couplers, * * * and he had to climb up on top of the gondola and stop it. * * * I did not warn or inform Boylen that the truck was standing there. * * * I gave him the kick signal * * * (to) kick back fast. * * * I saw him come on the car, his buttocks stuck out. I presume he was looking at the coupler. * * * It was a rather quick operation to put the car in momentum and cut it off before it got to the switch. It was done to save time. * * * It probably is true that this was the first day that Boylen had worked in our crew for a month. * * * I had full charge of the movement. I had authority to direct the man. I ordered the backing up and cutting of this car within that 80 or 100 foot space. * * * At the time I saw him with his buttocks out I knew what he was doing or was about to do. * * * I didn't consider it part of my duty to look out for obstructions that might injure a switchman if they were standing too close to the track. So far as practice and custom was concerned on things that you could see around there everybody was expected within reasonable limits to look out for himself."

With reference to his testimony at the trial of a former suit of Boylen against Berkey & Gay, to recover damages for this same accident, and wherein the Supreme Court of Michigan reversed a judgment given Boylen (260 Mich. 211, 244 N.

W. 451), the foreman testified: "At Grand Rapids I testified that to disconnect the cars you have to get down on the stirrup where you can cut, and that this throws your hips out a distance from the car. I also testified that at the time he got struck he was hanging down with one hand and reaching down for the operating lever to cut the cars; * * * I also testified that that was the position he had to take to do what was expected of him in uncoupling the cars. * * * When you were at the switch you could see quite a distance along the east side of the track. * * * I stated he was knocked off before he could look. I said there is a nine foot curve for a hundred and fifty feet south of the pit. It curves east, and then curves west about 10 feet north of the switch. I also testified that Boylen would be required to lean back and project his body in order to uncouple the cars, and I assumed that when I went down to the switch to attend to my work."

The engineer of the train testified that he saw Boylen knocked to the ground; that just about the time Boylen gave the stop signal and went in to pull up the operating lever the truck hit him; that he was struck before he could pull the pin; that the engineer was depending on Boylen's signals in moving the engine for the purpose of coupling with the gondola making the kick and for stopping the train; that in such a movement the engineer depends on signals from the switchman who is on the car that is being kicked; and that the truck which struck Boylen had been on that runway a month or six weeks before that day.

We think this clearly indicates that appellant's foreman, having positive knowledge that in obedience to his orders Boylen was entering into a situation where he was in imminent danger of contacting with a truck standing in dangerous proximity to the track, and well knowing the imminence of the contact, and without reason to suppose that Boylen knew or realized the danger, permitted him to enter into and encounter it without a single word of warning, which, had it been given, would in all likelihood have averted the accident. The foreman was waiting at the switch, facing the entire situation, and with all details within his view, well knowing that Boylen's attention and efforts were directed toward the proper making of this movement.

The only explanation of the foreman for his seemingly gross indifference to the fate of this man who was evidently approaching imminent danger, was that he assumed every person would look out for himself. We do not think the duty of a foreman to employees under him, or even of fellow servants to each other, can be wholly encompassed in formal rules or specific orders. Conditions may and do arise where the plainest dictates of humanity and good sense and reasonable prudence require persons to act in order to avert injury to others. Under the extraordinary situation here presented we are satisfied that the foreman, in the exercise of ordinary care and prudence, ought to have notified Boylen of his impending danger, and that had he given such notice Boylen would quickly have straightened up from his squatting position and the accident would most likely not have happened. Whether in this situation the foreman may be regarded as a vice principal is not material. But if he be considered a fellow servant with Boylen, then under the Federal Employers' Liability Act the employer would be liable for the foreman's want of ordinary care as a proximate cause of, and contributing to, the accident.

No cases have been cited by either party bearing on this subject, which both have discussed, save that for appellant the case of New England R. Co. v. Conroy, 175 U.S. 323, 20 S.Ct. 85, 44 L.Ed. 181, was referred to; but this was a case involving questions of vice principal and fellow servants, and was decided before the adoption of the Federal Employers' Liability Act, whereby, in cases arising thereunder, the fellow servant rule was abrogated. Chesapeake, etc., R. Co. v. De Atley, 241 U.S. 310, 36 S.Ct. 564, 60 L.Ed. 1016; Illinois Cent. R. Co. v. Skaggs, 240 U.S. 66, 36 S.Ct. 249, 60 L.Ed. 528; Kanawha, etc., R. Co. v. Kerse, supra.

The insistence of Boylen's contributory negligence can avail appellant nothing under the Federal Employers' Liability Act (45 U.S.C. § 51 et seq. [45 U.S.C.A. § 51 et seq.]), whereunder (and the court so instructed the jury) if this appeared it would not defeat recovery, but would only authorize reduction of damages proportionate to his contribution toward the happening which caused the injury. 45 U.S.C. § 53 (45 U.S.C.A. § 53); Union Pac. R. Co. v. Hadley, 246 U.S. 330, 38 S.Ct. 318, 62 L.Ed. 751; St. Louis & S. F. R. Co. v. Brown, 241 U.S. 223, 36 S.Ct. 602, 60 L.

Ed. 966; Lehigh Valley R. Co. v. Scanlon, supra.

 Appellant contends the evidence does not warrant the conclusion that the train movement during which the injury occurred was interstate. The evidence clearly shows that, to appellant's knowledge, the furniture car, whose spotting at the required place was the sole purpose of this entire switching movement, was intended for interstate transportation. Appellant's chief clerk testified that when cars are ordered their purpose and destination are asked for and given (in this instance for shipping furniture to Los Angeles, Cal.), and the testimony of the factory's shipping clerk indicates such knowledge has a bearing on the kind of car which would be sent; and that 50-foot furniture cars, such as this was, are rarely used for intrastate transportation, but quite generally for interstate movements, as influencing in some manner the freight rates. This is sufficient to classify this switching movement as interstate. North Carolina R. Co. v. Zachary, 232 U.S. 248, 34 S.Ct. 305, 58 L. Ed. 591.

Appellant maintains that since the shipper had the power to change to some intrastate point the destination it gave on ordering the car, the shipment did not become interstate commerce until it was actually consigned and began to move interstate. We held otherwise in New York, C. & St. L. R. Co. v. Slater, 23 F.(2d) 777. But appellant contends that the cars there being switched, during which operation that accident occurred, were the railroad company's cars to be moved interstate to the company's knowledge. But the same power to change the intended destination was inherent in the company as well as in any other shipper. The intended interstate transportation here, whereof the switching was a part, was sufficient to thus characterize the entire movement. If the destination had been afterwards actually changed to one intrastate, that might have raised a question not here involved, and which we need not consider.

 While we do not yield to appellant's contention that the judgment ($12,500) is excessive, we are in accord with its concession that under the federal authorities we are not at liberty to consider that proposition where, as here, the amount of the judgment does not transgress some legally prescribed maximum. St. Louis, Iron Mt. & S. R. Co. v. Craft, 237 U.S. 648, 35 S.

Ct. 704, 59 L.Ed. 1160; Southern Ry.-Carolina Division v. Bennett, 233 U.S. 80, 34 S.Ct. 566, 58 L.Ed. 860; New York Lake Erie & W. R. Co. v. Winter's Adm'r, 143 U.S. 60, 12 S.Ct. 356, 36 L.Ed. 71; Searfoss v. Lehigh Valley R. Co. (C.C.A.) 76 F.(2d) 762.

The judgment is affirmed.