PHILADELPHIA & R. RY. CO. v. SKERMAN.

(Circuit Court of Appeals, Second Circuit. December 11, 1917.)

No. 39.

1. COURTS ⚖═352—PROCEDURE IN FEDERAL COURT—ARGUMENT OF COUNSEL—PROPRIETY.

In an action against a railroad company for damages for injuries resulting from a crossing accident, a statement by plaintiff's counsel that he claimed $50,000 damages is not, the case being tried in the federal District Court for New York, open to objection, though the cause of action arose in Pennsylvania, where such statement would have been open to objection; this being particularly true as the trial court directed the jury that the statement had nothing to do with the verdict except as to the limit of plaintiff's demand.

2. REMOVAL OF CAUSES ⚖═119—RESIDENCE—ACQUISITION—DETERMINATION.

In an action for personal injuries occurring in Pennsylvania brought by plaintiff in a state court in New York, and removed by defendant to the federal court, the question whether plaintiff had acquired a residence in the state of New York, which under Code Civ. Proc. N. Y. § 1780, was a condition precedent to instituting suit therein, is for the jury, where plaintiff testified that he was a single man, and, finding no employment in Pennsylvania after the action, moved to New York with the intention of residing therein.

3. RAILROADS ⚖═327(1)—CROSSING ACCIDENTS—NEGLIGENCE.

Under the decisions of Pennsylvania which govern a right of action for injuries received in that state when run down at a railroad crossing, the failure of the traveler before crossing tracks to stop, look, and listen is negligence per se, and that rule cannot be ignored by the jury.

4. RAILROADS ⚖═348(8)—CROSSING ACCIDENTS—TESTIMONY.

Testimony by plaintiff, who was struck in the nighttime by a train coming down grade by force of gravity merely, and which bore no light, the locomotive coming tender first, that he stopped, looked, and listened, cannot be rejected as contrary to the physical facts, and a verdict by the jury based thereon overturned.

5. TRIAL ⚖═312(3)—PROVINCE OF COURT—DIRECTIONS TO JURY.

In an action for injuries received in a crossing accident, where the negligence of defendant railroad company and the residence of plaintiff were the matters in issue, the case went to the jury on Saturday evening. On the following day, at 12:20 a. m., the court excused counsel until Monday morning, and furnished the jury with blanks for a sealed verdict. On Sunday at 8 a. m. the court, in the absence of counsel, sent to the foreman, in addition to the blank form of verdict for plaintiff and a blank form of verdict for defendant, a blank form with a finding for plaintiff on the question of residence, and a statement as to whether the jury had agreed on an issue of negligence, as well as a blank form with a finding on the issue of negligence, and a statement that the jury had not agreed on the question of residence. The jury, after sending in a special verdict finding for plaintiff, on the question of residence, and reciting the disagreement on negligence, handed in a sealed verdict which, when opened on the following Monday morning, contained a finding for plaintiff on both issues. *Held* that, if the conduct of the judge was irregular, it was in no way calculated to influence the jury or to prejudice defendant.

Hough, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of New York.

⚖═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Action by William Skerman against the Philadelphia & Reading Railway Company, begun in the state court, and removed to the federal court. There was a judgment for plaintiff, and defendant brings error. Affirmed.

See, also, 225 Fed. 85; 230 Fed. 814, 145 C. C. A. 124.

Macklin, Brown & Purdy, of New York City (Pierre M. Brown, of New York City, of counsel), for plaintiff in error.

Gilbert D. Steiner and John C. Robinson, both of New York City, for defendant in error.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge. January 31, 1913, the plaintiff in this case was struck by one of defendant's trains as he was crossing Race street, Shamokin, Pa.

November 25th he began suit to recover damages for his injuries in the Supreme Court of the state of New York for Richmond county. The defendant removed the case to the District Court of the United States for the Eastern District of New York.

[1] At the opening of the trial, the plaintiff's counsel said to the jury that the plaintiff—

"asks for a verdict at your hands for $50,000.

"Mr. Brown: I object to that statement, and move that a mistrial be ordered on the ground that it is contrary to law for the plaintiff's counsel to state the amount of damages that they ask for in the presence of the jury.

"The Court: Motion denied. I shall instruct the jury that that is not evidence, and has nothing to do with the verdict except as an indication of the limit of the plaintiff's demand.

"Defendant excepts."

The defendant's objection is based upon the practice in Pennsylvania as stated by the Circuit Court of Appeals for the Third Circuit in Vaughan v. Magee, 218 Fed. 630, 134 C. C. A. 388:

"In the ordinary suit on a bond, note, contract, or account, the amount in suit can be stated, goes in evidence, and affords the jury a money basis on which the rights of the parties can be determined. In damage cases there is no fixed sum in controversy. The amount of damages a party recovers is ascertained by the jury from evidence regularly offered and admitted by the court of such pertinent facts as will enable the jury to itself fix the money value of the injury sustained. While among those facts may, at times, be certain definite amounts in the way of medical, surgical, and nursing expenses, and other items capable of exact fixation, yet, when it comes to determining the amount of the damages to be awarded, this is the province of the jury alone, and of a jury uninfluenced by the figures or estimates of any other person as to the amount thereof. The law, therefore, permits no estimate to be given by either party to the jury, even under oath, of the money amount of such damages, and to get the same character of estimates before a jury by indirect methods is a reprehensible practice.

"Whatever may be the practice in other jurisdictions, the courts of Pennsylvania have been stern and unyielding in that regard. Wherever a court, in its charge, or counsel, in addressing a jury, have brought to a jury's notice that a plaintiff claimed a fixed sum for damages, it has been adjudged a mistrial. Carothers v. Pittsburgh Railways Co., 229 Pa. 560 [79 Atl. 134]; Reese v. Hershey, 163 Pa. 253 [29 Atl. 907, 43 Am. St. Rep. 795]; Quinn v. Phila. Rapid Transit Co., 224 Pa. 162 [73 Atl. 319]; Dougherty v. Pittsburgh

Railways Co., 213 Pa. 346 [62 Atl. 926]; Hollinger v. York Railway Co., 225 Pa. 419 [74 Atl. 344, 17 Ann. Cas. 571]."

No such practice prevails here, and we are not favorably impressed by it. It seems to us that counsel has a clear right to state what the plaintiff asks and expects to recover for his injuries. It is not evidence, but, at most, mere matter of argument, in making which counsel are entirely within their rights. Even if it were viewed as improper, Judge Chatfield at the time, and subsequently in his charge, fully corrected any undue weight that the jury might have given it.

[2] The next exception relied upon by the defendant is as to the jurisdiction of the court in connection with the residence of the plaintiff. He testified that he was a single man, by occupation a miner, and that, getting no employment in Shamokin after the accident, he moved to Brooklyn with the intention of residing in New York state. After being there two weeks, he went to Staten Island for two weeks, where he began his suit at law, and then returned to Brooklyn, where he remained two weeks, and, finding no work, went to Jersey City, from whence he returned to Staten Island some three weeks before this trial. Under section 1780 of the New York Code of Civil Procedure, unless a resident of the state of New York, he could not maintain his action against the defendant, which was a foreign corporation. Because of misunderstanding by the court of· the point intended to be raised, we reversed a judgment in favor of the plaintiff at a former trial (230 Fed. 814, 145 C. C. A. 124), saying:

"The question of the plaintiff's residence was one of intention to be drawn, not only from his testimony as to intention, but from the surrounding circumstances. It was for the jury, not being a pure question of law, but depending upon facts. The jury might find residence on less evidence in the case of an unmarried and disabled laboring man looking for light work than they would in the case of a man with a family, well-to-do and accustomed to a permanent domicile.

"The objection made by the defendant is a substantial one, and, although it should have been pleaded more specially and brought more clearly to the attention of the trial judge than it was, we feel obliged to reverse the judgment and order a new trial."

On the present trial the court left the question of the plaintiff's residence to the jury as a question of fact in accordance with our decision, and they have found it in the plaintiff's favor.

[3] The defendant next contends that the case should not have been submitted to the jury at all because the defendant's liability in tort depends upon the law of Pennsylvania, where the accident occurred, which makes it an obligation to stop, look, and listen before crossing the tracks of a railroad company. This is not a rule of evidence, but a rule of law, peremptory, absolute, and unbending, which the jury should never be permitted to ignore or evade or pare away by distinctions and exceptions. Not to stop, look, and listen is negligence per se. The decisions of the Supreme Court of Pennsylvania fully establish this. Among others, Aiken v. Penna. R. Co., 130 Pa. 380, 18 Atl. 619, 17 Am. St. Rep. 775; Ihrig v. Erie R. R. Co., 210 Pa. 98, 59 Atl. 686.

[4] The plaintiff testified that he did stop, look, and listen, and the jury must have believed him. The accident happened on a dark, rainy night. The train was coming down hill by the force of gravity merely. The locomotive was coming tender first, and there was evidence that there was no light on the tender. Under these circumstances the jury might find, and indeed must have found, under the instructions of the court, that although the plaintiff did stop and look and listen, he was not guilty of negligence in not seeing or hearing the approach of the train in time to avoid it. His story is not, as the defendant contends, preposterous. On the other hand, its contention amounts to saying that one who does stop, look, and listen can under no circumstances be hit by a moving train. It might have been so held in this case, if the accident had happened in broad daylight, or even at night, if the train were being moved by a locomotive carrying the usual brilliant headlight, and especially if moving fast. We think the case was rightly submitted to the jury.

[5] The jury went out on Saturday, October 21, 1916, at 2 o'clock, and returned at 5 p. m. with the request that a part of the charge as to the question of plaintiff's residence be read to them. October 22d at 12:20 a. m. the court excused counsel until Monday morning, October 23d at 10 a. m., and furnished the jury with blanks for a sealed verdict. October 22d at 8 a. m. the court, in the absence of counsel, in his own words—

"* * * sent to the foreman, in addition to the blank form of verdict for the plaintiff and the blank form of verdict for the defendant, a blank form with a finding for the plaintiff upon the question of residence, and a statement as to whether they had or had not agreed on the issue of negligence. I also submitted to the foreman of the jury a blank form with a finding that they had agreed upon the issue of negligence and a statement that they had not agreed upon the question of residence. It is evident that there would be no need of asking the jury if they had agreed upon a verdict for the defendant on the question of residence, because the previous instructions had been to the effect that such an agreement would be conclusive of the case."

October 22d at 10 a. m. the jury sent to the court a special verdict as follows:

"We, the jurors impaneled herein, find for the plaintiff on the subject of residence. We have not been able to agree on the question of negligence."

The court thereupon left the jury in further consultation. At 12 p. m. the jury handed in a sealed verdict, which was opened on Monday morning, the clerk inquiring as follows:

"'Gentlemen of the jury, you say that you, the jurors impaneled in this case, find for the plaintiff on the subject of residence, so say you all.' And so said the jury all. The clerk then inquired further: 'Gentlemen of the jury, you say that you, the jurors impaneled in the case, find a verdict for the plaintiff, and that you assess the damages in the sum of $23,350, so say you all.' And so said the jury all."

If what the judge did was irregular, it was in no way calculated to influence the jury nor prejudicial to the defendant. He gave them no instructions, and as we are satisfied that the jury were correctly advised as to the law of the case the judgment is affirmed.

HOUGH, Circuit Judge, dissents.