Hillsborough, } No. 3706.
May 4, 1948. }

PEARL FRANCES WILSON *v.* MANCHESTER SAVINGS BANK.

*Albert J. Lemieux, Richard F. Upton* and *Robert W. Upton (Mr. Richard F. Upton* orally), for the plaintiff.

*Wyman, Starr, Booth, Wadleigh & Langdell (Mr. Booth* orally), for the defendant.

BLANDIN, J. Although there must be a new trial for reasons hereinafter stated, the Court correctly denied the defendant's motions for a nonsuit, a directed verdict, to set aside the verdict and for judgment notwithstanding the verdict. The gist of the defendant's argument in support of his motions is that there is no evidence of causal negligence on the part of the defendant, and further that the plaintiff's testimony is incredible as a matter of law. Turning to the first of these two contentions we find that on the evidence most favorable to the plaintiff it might be found there was a "bulge" or rise in the center of the platform three-fourths of an inch high, and that this was responsible for the plaintiff's losing her balance when the doorknob suddenly came off as she turned it. True, there was conflicting evidence upon this, but the pictures of the platform introduced as exhibits show an appreciable rise and consequent depression, and there is testimony that this was greater at the time of the accident than when the pictures were taken. There was also evidence that such a variation not only would have a tendency to cause the plaintiff to turn her ankle but that it actually did so, with the result that she lost her balance and fell. The case is thus distinguishable upon the facts from *Medbury* v. *Garage,* 91 N. H. 406, cited by the defendant. In that case the court said that there was no evidence of any "particular depression" but "at most a slight roughness. . . . The record is without any evidence that more than mere roughness was the cause of the plaintiff's injuries. The most that could be found is that . . . a slight roughness . . . checked his heel when he turned. There is no duty to maintain a garage floor so smooth that such a check cannot occur." *Medbury* v. *Garage, supra.* In *Steeves* v. *Company,* 92 N. H. 52, 54, also cited by the defendant, the court did not hold that a hump three-eighths of an inch high was insufficient to find the defendant responsible, but said that there was no evidence that the alleged hump caused the plaintiff to fall and inferentially indicated that had

the plaintiff shown the hump to be a cause of the accident there would have been grounds for liability. There was also evidence in the case before us that had a handrail been placed either on the sides of the platform or in the center the plaintiff would have saved herself. The expert called by the plaintiff testified that for ten years it had been standard practice to install such rails under similar circumstances. The defendant takes nothing by its exception to this evidence as it is admissible on the question of the defendant's due care. *Calley* v. *Railroad*, 93 N. H. 359, and cases cited; *Bouley* v. *Company*, 90 N. H. 402; *King* v. *Gardiner*, 76 N. H. 442. The fact that the doorknob was a contributing cause does not relieve the defendant. *Harmon* v. *Richardson*, 88 N. H. 312; *Prichard* v. *Boscawen*, 78 N. H. 131.

Since no issue is raised as to the plaintiff's care it follows that she was entitled to submit to the jury the question of the defendant's causal negligence unless no reasonable person could believe her testimony. *Hebert* v. *Railroad*, 90 N. H. 324. The defendant earnestly argues that the plaintiff's extraordinary ability and apparent willingness to change her story to meet the demands of the situation are such that the *Hebert* case is applicable. There is force in its contention. The *Hebert* case has been much criticized, however, it is believed that the difficulty lies not in its tenet that "creditability may become a matter of law," but in the application, which is by no means an easy task. The defendant points to the fact that Miss Wilson gave three different versions of this accident; the first in the form of three statements, one being a letter to the treasurer of the defendant bank on March 20, 1944; another being a statement to a representative of the defendant about a week later on March 29, and still another, a history to the recording librarian at the Sacred Heart Hospital some two months afterwards, on May 31. In all these she mentioned as the cause of her fall only the loose doorknob. Second, in her deposition she claimed her difficulty due to a combination of the knob and "loose, wobbly, sunken," boards. Third, at the trial, that the cause was the faulty doorknob and a "bulge" or raised board on the platform. However, there appears to be some explanation for these discrepancies. As correctly pointed out by her counsel if some boards were sunken others were higher. The plaintiff says further regarding these inconsistencies that when she first told of the accident the loose doorknob was uppermost in her mind and for some months after her fall her suffering was such that she paid little attention to anything else. She also states that she considered a sunken board a loose board and that her ankle "wobbled" which might have

given her the impression of a loose board. The jury heard and observed her while this court did not. Her story postulates no physical impossibility (See *Brown* v. *Mailhot*, 89 N. H. 240), and her appearance on the witness stand may have carried to the triers of fact a conviction of sincerity which precluded a finding that she deliberately falsified her testimony. Although the test in such situations as this has been put in innumerable ways and often at great length it all boils down to this—could reasonable persons have believed the plaintiff? We hold that they could and therefore the question was for the jury.

We come now to the defendant's exception to the Court's ruling with reference to the letter, in the handwriting of the plaintiff and signed by her, to the treasurer of the defendant bank, the material portions of which read as follows:—

"On Tuesday, February 8, 1944, about 11:00 A. M. I was injured on property owned by the Manchester Savings Bank at 361 Massabesic Street, this city, where I have been working. While about to unlock front door, at above address the doorknob came off, throwing me backwards from the platform down the steps and onto the sidewalk, resulting in painful back injuries which is still confining me to my home at 250 Massabesic Street where I was brought in a car and carried into the house. . . .

"As I must have X-ray treatment at the hospital, will you kindly let me know about the bank's liability insurance on their property which includes 361 Massabesic Street."

This letter, while going into a little more detail concerning the accident than her statement to the librarian at the hospital where she went on May 31, corroborates the story she told then and also the statement she gave to a representative of the defendant on March 29. In none of these statements was there reference to any defect in the platform. The defendant bases its defense on the proposition that the loose doorknob was the sole cause of her fall, and that she brought in the claim of a defective platform only after she was informed of the fact that she had no case against the bank unless she could prove the platform as well as the doorknob contributed to her accident. Obviously by far the most persuasive of these three items bearing on this issue was the letter written and signed by the plaintiff herself. The remaining statements were written by someone other than the plaintiff and hence much more susceptible to error, a fact which her counsel was careful to impress on the jury. The Court ruled upon the plaintiff's insistence that if the defendant introduced any part of it the

entire letter must go in. The plaintiff now claims this ruling should be sustained on the grounds that it was discretionary with the Trial Justice whether greater prejudice would accrue to the plaintiff by the exclusion of a portion of the letter than to the defendant by requiring the use of all of it. He argues that this ruling presents no question of law for this court. This is error. In *Menard* v. *Cashman*, 93 N. H. 273, 275, cited as an authority by the plaintiff the court said "while the issue presented by the invocation of the undue prejudice rule is one of fact, the determination of when that issue may be raised is one of law." That case is also clearly distinguishable from the present one in that there fairness required the introduction of a letter from the plaintiff to the defendant's insurer, claiming damages, to rebut the defendant's argument that the plaintiff made no claim and hence lacked confidence in her case. Here the defendant raised no such issue and furthermore twice offered to admit that the letter of March 20 was a demand.

Nor does the doctrine of completeness, that the whole of an utterance must be taken together, aid the plaintiff. That theory rests entirely on "conceptions of substantial justice and fairness" to both parties and upon the idea that " 'fairness may mean completeness.' " See *Clapp* v. *McCleary*, 89 N. H. 65, 68, and authorities contained therein, cited by the plaintiff. In view of the defendant's offer to admit a demand by the plaintiff the assumption of insurance contained in the plaintiff's letter was irrelevant and "so incidental and separable from the rest of the statement as to make its exclusion reasonable and proper." *McCurdy* v. *Flibotte*, 83 N. H. 143, 144. Here the fact of insurance did not creep in casually and unavoidably and in the form of a mere guess that the defendant carried no insurance, as in *Sullivan* v. *Sullivan*, 91 N. H. 341, also cited by the plaintiff. It has been repeatedly stated in this jurisdiction "that the correct procedure is to exclude all reference to insurance" and that unnecessary disclosure is grounds for a mistrial. *Piechuck* v. *Magusiak*, 82 N. H. 429, 431. See also, *McCurdy* v. *Flibotte, supra*. While evidence of insurance does not render the trial unfair as a matter of law (*Dimarco* v. *Smith*, 90 N. H. 378), yet the rule is that "the facts of insurance . . . should not be disclosed to the jury without unavoidable necessity." *Montello Shoe Company* v. *Suncook Industries*, 92 N. H. 161, 162. Obviously there was no unavoidable necessity here and the result of the procedure adopted was to deprive the defendant of evidence indispensable to its cause unless it were to incur the prejudice of the issue of insurance. Under the circumstances disclosed

here no principle of law requires that the introduction of incompetent, prejudicial and circumstantial matter be attached as a condition to a party's offer of direct, competent evidence vital to his case and to the jury in their search for truth.

It is small wonder that confronted with myriad questions of both fact and law and under pressure to move with dispatch the significance of certain matters is not always as clear to the trial court as to an appellate tribunal which has ample time to study the record. However, it appears that since the reference to insurance was prejudicial to the defendant, and served no legitimate purpose of the plaintiff, there was no basis in law for the Court's ruling and it must be reversed. *Menard* v. *Cashman, supra,* and cases cited; *Thistle* v. *Halstead, ante,* 87.

This appears to dispose of all exceptions which are likely to arise at another trial, and the order is,

*New trial.*

All concurred.