**Alberic H. OUELETTE et al., d/b/a Sandy Point Beach and Restaurant, Defendants, Appellants,**

v.

**Mary F. CHAMPAGNE, Plaintiff, Appellee.**

**No. 5838.**

United States Court of Appeals First Circuit.

Heard Oct. 3, 1961.

Decided Dec. 4, 1961.

Shane Devine, Manchester, N. H., with whom Devine, Millimet & McDonough, Manchester, N. H., was on brief, for appellants.

Donald R. Bryant, Dover, N. H., with whom Burns, Bryant & Hinchey, Dover, N. H., was on brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

WOODBURY, Chief Judge.

The defendants-appellants, husband and wife, owned and operated a restaurant, motel and cottages located near

the southern tip of Lake Winnipesaukee, New Hampshire, on Sandy Point. The plaintiff-appellee, a woman in her sixties, registered with her two adult daughters at the defendants' motel on July 1, 1957, and dined at their restaurant that evening. As she left the restaurant after dinner she fell while attempting to close the door behind her and sustained a fractured hip. This appeal is from a judgment entered by the United States District Court for the District of New Hampshire on a verdict returned for the plaintiff.[1]

■ The door of the defendants' restaurant faces north, opens inward and is hinged on the right as one enters the building. The evidence is that as the plaintiff followed her two daughters out of the restaurant she grasped the outer edge of the open door in her left hand, and then turning grasped the outside doorknob in her right hand and started to pull the door shut behind her. At that point a gust of wind struck the door wrenching it out of her hand, causing her to spin clockwise, lose her balance and fall to the floor just inside the restaurant. There is no evidence that any one before had encountered difficulty with the door. But there is evidence from which it might reasonably be found that the restaurant door was exposed to northerly winds sweeping some thirty miles down the lake, that on a few occasions each summer when the restaurant was open for business it was found necessary to keep the door closed to prevent strong or gusty northerly winds from blowing into the restaurant, that such a wind was blowing at the time of the accident and that an automatic door-closing device, had there been one on the door, would have provided sufficient resistance to the force of the wind on the door to prevent it from jerking the plaintiff off balance and causing her to fall.

This evidence is enough to take the plaintiff's case to the jury. The defend-

ants' motions for directed verdict and for judgment notwithstanding the verdict were properly denied.

There was evidence that some two years after the accident an inspection of the premises by an expert hired by the plaintiff disclosed that the floor just inside the door of the restaurant sloped downward a quarter of an inch in two feet, that the two lower hinges of the door were sprung, the middle one an eighth of an inch and the lower one a quarter of an inch and had been shimmed, and that the door was out of plumb, leaning inward about an inch from top to bottom thereby causing it to have a tendency to swing open into the restaurant by force of gravity. There was evidence from which the jury might find that these conditions existed at the time of the accident and that they were not in accord with accepted standards of construction in New Hampshire.

■ Defendants' counsel at the close of the evidence moved that any claim that the level of the floor could have caused the accident be withdrawn from the consideration of the jury. The court properly denied the motion. Had the floor sloped an inch or two certainly the jury on the basis of common everyday knowledge would be entitled to infer that the slope might well have contributed to the accident. The difference between this example and the evidence in the case at bar is only in degree. The slope of the floor was not great but we cannot say that reasonable men could not find that the slope, slight as it was, could not under the circumstances of exposure to wind, inward tipping of the door and lack of a door check have contributed causally to the plaintiff's loss of balance and fall. Our holding is not contrary to Steeves v. New England Telephone & Telegraph Co., 92 N.H. 52, 24 A.2d 606 (1942), which held in part that evidence of a floor's slight unevenness would not have

1. The facts essential for federal jurisdiction under Title 28 U.S.C. § 1332(a) (1), on the ground of diversity of citizenship and amount in controversy, are clear and undisputed.

justified a finding that such defect caused plaintiff's accident because only conjecture established that she fell while walking over the defective portion of the floor. The court said at page 54, 24 A.2d at page 608: "This 'hump' was accurately placed by the evidence, but the evidence as to the precise place where the plaintiff fell is so vague that it is at best conjectural whether she fell on the 'hump'."

Whatever else the court said in Steeves concerning the floor's unevenness we read as only dicta, for in Wilson v. Manchester Savings Bank, 95 N.H. 113, 114, 115, 58 A.2d 745, 746 (1948), the court said that in the Steeves case " * * * the Court did not hold that a hump of three-eighths of an inch high was insufficient to find the defendant responsible, but said that there was no evidence that the alleged hump caused the plaintiff to fall and inferentially indicated that had the plaintiff shown the hump to be a cause of the accident there would have been grounds for liability." In the case at bar the evidence demonstrates that plaintiff fell while walking or standing on the sloping floor. We think her claim was properly submitted to the jury.

■ Similar considerations support the denial by the court below of the defendants' requests for instructions to the effect that evidence that the floor sloped, evidence that the door was out of plumb, evidence that the two lower hinges of the door were sprung, and the bottom one shimmed and evidence that the door was not equipped with a checking device was not to be considered by the jury as any evidence of the defendants' negligence. Granting these requests would have the effect of withdrawing evidence as to the matters covered therein from the consideration of the jury, as was moved specifically with respect to the evidence of the slope of the floor. Indeed, the request for instruction on the evidence of the slope of the floor only repeats the motion to withdraw that evidence from the jury's consideration. In view of the known

exposure of the restaurant door to north winds blowing the length of the lake, reasonable men on the basis of general knowledge might reasonably find that any one or all of the substandard conditions of the restaurant floor and door and its lack of a checking device caused or contributed to the plaintiff's fall.

One more matter remains for consideration.

■ Counsel for the plaintiff said in his argument to the jury:

"I say to you, Mr. Foreman and gentlemen, we are asking $50,000.00 in this case. She has brought suit to recover that amount. You say by your verdict whether that is reasonable or not. You may think it's too much, you may think it's too little, or you may think it's just right. That is the amount for which she is asking."

Defendants' counsel did not object to this portion of the argument. But they did object to the failure of the court to grant their request for an instruction that the amount demanded in the complaint is not evidence of the amount of the plaintiff's damages but that, ignoring the amount demanded, any award of damages should be based only upon the legal rules as to damages given by the court.

■ In New Hampshire it is not improper for counsel in argument to refer to the *ad damnum* in the writ. Sanders v. Boston & M. Railroad, 77 N.H. 381, 382, 92 A. 546 (1914); Williams v. Williams, 87 N.H. 430, 433, 180 A. 172 (1935). And we are not aware of any authority in New Hampshire, or for that matter elsewhere, requiring a cautionary instruction such as that requested by defendants' counsel. However, in view of the general impression among laymen that the amount of the *ad damnum* measures the importance of a case, we think the better practice would be to give instructions to the jury in accordance with the defendants' request whenever counsel for the plaintiff calls the amount of the *ad damnum* in his

writ to the jury's attention. But, since counsel for the plaintiff did not categorically ask an award of damages in the exact amount of his *ad damnum* but told the jury it might think that amount too much, too little or just right, and since counsel for the defendant did not object to the court's instructions to the jury on the rules it should apply in assessing damages, should it reach that issue, we do not think a new trial ought to be awarded in this case on the ground of failure to grant the cautionary charge requested.

Judgment will be entered affirming the judgment of the District Court.

ALDRICH, Circuit Judge, (dissenting).

Although the consequences disturb me, I reluctantly accept it as the law of New Hampshire that a jury can be permitted to find that a slope of one quarter of an inch in two feet, described by that court as "imperceptible to the eye," Steeves v. New England Telephone & Telegraph Co., 1942, 92 N.H. 52, 54, 24 A.2d 606, 608, can contribute to making premises unsafe. I do not follow the reasoning that since a much larger slope could readily be found to do this, the difference "is only in degree." Almost all differences are in degree. This does not free courts from the duty of making a decision. As was said in Jennings v. Tompkins, 1902, 180 Mass. 302, 303, 62 N.E. 265, where a floor nail projected ⁹⁄₁₆ths of an inch, "The line must be drawn somewhere, and it is necessarily to some extent an arbitrary matter where it is to be drawn."

However, I cannot agree that the court's failure to instruct the jury that the *ad damnum* was not evidence was merely poor practice and not prejudicial error. In my opinion it does not advance the matter to say that plaintiff did not ask the jury to return the precise *ad damnum* figure, or that the defendant did not object to plaintiff's argument to the jury. Counsel's argument, as such, was perfectly proper under the law of New Hampshire, which permits mention of the *ad damnum*. But we cannot assume that a jury is sufficiently sophisticated to be able to place each element in a case in its true perspective without help. It is standard practice for the court to tell the jury that pleadings and the opening of counsel are not evidence. A plaintiff, and even an expert witness, could not testify that her claim had a certain dollar value. If by the *ad damnum* the plaintiff is to be permitted to offer her opinion, then it behooves the court to make clear that this opinion does not rise to the dignity of evidence. See, e. g., Philadelphia & R. Ry. Co. v. Skerman, 2 Cir., 1917, 247 F. 269; Smith v. Philadelphia Transp. Co., 3 Cir., 1949, 173 F.2d 721, 726. With a jury of laymen I consider this a fundamental matter.